IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STEPHANIE, T.[1], | Case No. 3:19-cv-723-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Caitlin S. Laumaker and George J. Wall, LAW OFFICES OF GEORGE J. WALL, 825 NE 20th Avenue, Suite 330, Portland, OR 97232. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; L. Jamala Edwards, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Stephanie T. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her application for Supplemental

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Security Income Benefits ("SSI"). For the reasons discussed below, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively applied for SSI on April 20, 2016, alleging disability beginning on January 1, 2000.[2] AR 88-90. During the administrative hearing, Plaintiff amended her alleged onset date to April 20, 2016. AR 45. Plaintiff was born on June 15, 1972, and was 43 years old on her amended alleged disability onset date. AR 45. Plaintiff completed classes up to the 11th grade and did not obtain a GED. AR 48. Plaintiff alleged disability based on schizoaffective disorder, bipolar disorder, post-traumatic stress disorder ("PTSD"), degenerative joint disease in her hips, and severe knee pain. AR 89-90. The Commissioner denied Plaintiff's application both initially and upon reconsideration; Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). AR 103-04, 121-22, 135. An administrative hearing took place on May 5, 2018. AR 42. On June 26, 2018, the ALJ issued a decision that Plaintiff was not disabled under the Social Security Act. AR 13-25. On June 26, 2018, Plaintiff requested review of the ALJ's decision by the Appeals Council, and on April 3, 2019 the Appeals Council denied Plaintiff's request for review. AR 1-3. The ALJ's decision is thus the final decision of the Commissioner. Plaintiff seeks review of that decision.

### B. Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

---

[2] Plaintiff previously applied for SSI on July 13, 2007, and an ALJ denied her claim on February 18, 2010. AR 70-78. This final decision creates a rebuttable presumption of continuing non-disability that requires the ALJ to adopt certain findings from the previous decision unless Plaintiff presents new and material evidence or if the applicable legal standards have changed. Plaintiff has rebutted the presumption because Plaintiff has new impairments and the mental health listings changed on January 17, 2017. Thus, the current ALJ correctly declined to adopt the findings from the previous decision.

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining

whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*

*Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520

(DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially

dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the

following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay or
    profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such
    work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
    this impairment must have lasted or be expected to last for a continuous
    period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
    claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
    §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
    impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then
    the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).
    If the impairment does not meet or equal one or more of the listed
    impairments, the analysis continues. At that point, the ALJ must evaluate
    medical and other relevant evidence to assess and determine the claimant's
    "residual functional capacity" ("RFC"). This is an assessment of work-
    related activities that the claimant may still perform on a regular and
    continuing basis, despite any limitations imposed by his or her impairments.
    20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

> After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ applied the sequential analysis process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 20, 2016, her alleged onset date. AR 15.

At step two, the ALJ found that Plaintiff has the following severe impairments: spine disorder, osteoarthritis, obesity, schizophrenic disorder, anxiety, depression, substance abuse, and PTSD. *Id.* The ALJ also noted Plaintiff's diagnosis of celiac disease, mild obstructive sleep apnea, and her history of gastrointestinal issues. AR 16. The ALJ found that these conditions were not severe impairments because no provider stated that they cause functional limitations. *Id.*

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 16-17. The ALJ considered Listing 1.02(b) for major joint disfunction, Listing 1.04 for disorders of the spine, and Listings 12.03, 12.04, and 12.06 for Plaintiff's mental impairments. AR 17-18. The ALJ found that Plaintiff's physical and mental impairments do not meet or medically equal the severity of one of the specific impairments listed in the regulations. AR 17-18.

Continuing step three, the ALJ found that Plaintiff had an RFC to perform light work with these exceptions:

> [Plaintiff can] lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk about 6 hours of 8; sit about 6 hours of 8; frequently crawl, climb stairs, climb ramps, crouch, and kneel; occasionally climb ladders, ropes, and scaffolds; the claimant is able to understand, remember, and carry out more detailed tasks, but is limited to simple, repetitive work; the claimant is capable of no more than occasional contact with the public; the claimant can interact with coworkers in structured interactions or meetings; and the claimant has a difficult time responding to change and is limited to tasks that do not require much change and are instead focused more on simple, repetitive tasks.

*Id.*

In reaching this conclusion, the ALJ considered all Plaintiff's symptoms to the extent that they are consistent with the evidence, including the written medical evidence from Timothy Janchar, M.D., Poorav Patel, M.D., Arman Faroghi, M.D., Michael Fox, D.O., Lauren Deisenroth,

PMHNP, Patrick Chen, M.D., Noah Hornick, M.D., Kristin Behle, M.D., and Kathryn Clark, QMHC. AR 20-22. The ALJ also considered medical opinion evidence from the state agency medical consultants Lloyd Wiggins, M.D., Susan Moner, M.D., Ben Kessler, PsyD., and Bill Hennings, PhD. AR 22-23.

At step four, the ALJ found that Plaintiff has no past relevant work. *Id.* At step five, the ALJ consulted a vocational expert ("VE"), who testified that there are other jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 24. For example, Plaintiff could work as a small products assembler, price marker, or a routing clerk. *Id.* Consequently, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act from the alleged onset date through the date of the ALJ's decision. AR 25.

## DISCUSSION

Plaintiff seeks review of the determination that she was not disabled. Plaintiff argues that the ALJ erred by: (A) improperly rejecting Plaintiff's subjective symptom testimony; and (B) improperly rejecting the opinion of Kathryn Clark, QMHC. Each argument is addressed in turn.

## A.  Plaintiff's Subjective Symptom Testimony

### 1.  Applicable Law

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell*

*v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). Finally, if the ALJ's credibility finding is specific, clear, and convincing, and supported by substantial evidence in the record, the court may not engage in second-guessing. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *see also Kirkruff v. Berryhill*, 2017 WL 1173910, at *2 (D. Or. March 28, 2017).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The

Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's credibility decision may be upheld even if not all the ALJ's individual reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 446 F.3d 880, 883 (9th Cir. 2006).

### 2. Analysis

The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause some of Plaintiff's alleged symptoms, but not to the extent claimed by Plaintiff. AR 16. Thus, the second step of the analysis required the ALJ to offer clear and convincing reasons to reject Plaintiff's testimony about the severity of her symptoms. The ALJ discounted Plaintiff's subjective symptom testimony about her mental impairments because: (a) her symptoms improved when she received the appropriate treatment; and (b) her activities of daily living are inconsistent with her alleged limitations. The ALJ gave Plaintiff's testimony about her physical impairments less weight because: (a) Plaintiff's activities of daily living are inconsistent with her

alleged physical limitations; (b) Plaintiff has received little treatment for her back pain since her alleged onset date; and (c) Plaintiff's claimed limitations are inconsistent with the objective medical evidence.

### a. Mental Impairments

#### i. Symptom Improvement

Plaintiff first argues that the ALJ erred by rejecting her subjective symptom testimony because her symptoms have improved with appropriate treatment. Plaintiff asserts that although her impairments improved with treatment, her symptoms did not improve to the point of being able to sustain full-time employment. The Commissioner responds that the ALJ reasonably considered Plaintiff's subjective symptom testimony and appropriately discounted her testimony because her symptoms improved after she stopped using methamphetamine and received the appropriate treatment for her mental health.

When an ALJ considers a claimant's mental health issues, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Although "[c]ycles of improvement and debilitating symptoms are a common occurrence . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.*; *see also Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) ("The ALJ's conclusion that Rodriguez was responding to treatment also does not provide a clear and convincing reason for disregarding [his doctor's] opinion. No physician opined that any improvement would allow Rodriguez to return to work."). An ALJ, however, "may consider . . . the claimant's daily activities, inconsistencies in testimony, *effectiveness* or adverse side effects of any pain medication, and relevant character evidence" when assessing how much weight to give a

claimant's symptom testimony. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted) (emphasis added).

The ALJ noted that throughout much of 2016, before quitting methamphetamine, Plaintiff had angry outbursts during several medical visits. AR 20. For example, in May 2016, Plaintiff visited the hospital for the second time after "an apparent drugging and sexual assault by her roommate . . . the second such incident in three months." *Id.*, citing AR 415. During the first visit, Plaintiff became angry and upset and security escorted Plaintiff out of the hospital. AR 524. During the second visit, Plaintiff left the hospital against the advice of the medical staff before a full examination could occur. AR 504-05, 508-511. During both hospital visits, Plaintiff acknowledged that she often used marijuana and methamphetamine.

In June 2016, Plaintiff visited the emergency room for shortness of breath and bilateral leg swelling, became upset with the wait time, and left after a doctor determined she was safe for an early discharge. AR 523. In October 2016, Plaintiff visited the hospital twice for mental health treatment, stated that she was not taking medications for mental health, expressed a desire to resume taking medication, and tested positive for methamphetamine and marijuana. AR 653-54. During her October 2016 visit, Dr. Arman Faroghi stated that Plaintiff's presentation matched an "untreated psychiatric condition compounded by her substance abuse and medication noncompliance." AR 655. Dr. Faroghi discharged Plaintiff and diagnosed her with depression with a history of personality disorder, schizoaffective disorder, bipolar disorder, dissociative disorder, and PTSD. *Id.* Dr. Faroghi referred Plaintiff for mental health treatment and advised her to go to rehab and quit using drugs. *Id.*

In November 2016, Plaintiff saw Michael Fox, D.O. in the emergency room for a rash and Plaintiff once again left early, this time because she was concerned about leaving her cat alone at

home. AR 1168. Dr. Fox described Plaintiff as depressed, emotionally labile, and assessed schizoaffective disorder, but opined that "claimant's main problems were psychosocial stressors, not mental health issues." AR 21, 1168. Dr. Fox further stated that he "repeatedly expressed desire to help her with her situation and to see if there are any other options available for her, but she was unwilling to entertain those ideas at this time." *Id.*

After Plaintiff's November 2016 emergency room visit, Plaintiff stopped using methamphetamine and began counseling with Lifeworks. AR 19, 21. In April 2017, a Lifeworks intake record stated that Plaintiff had been clean and sober for four months, and by February 2018, Plaintiff was clean and sober for more than a year. AR 671, 692, 711, 740-47, 823. Significantly, none of Plaintiff's records show methamphetamine use since the end of 2016. AR 21. Plaintiff continued Lifeworks group and individual therapy for much of 2017 and 2018, but missed some sessions because of gastrointestinal issues. During this time, Lauren Deisenroth, PMHNP, noted that Plaintiff was a fair historian, her thought process was linear and goal oriented, and that her insight and judgment were poor. *Id.*; AR 717-21. Accordingly, she prescribed Plaintiff Lexapro, and switched Plaintiff to sertraline in June 2017. AR 756. Plaintiff also reported having emotional support from her cat and four-year-old grandson and moved to Portland to avoid gang violence and drug users. AR 21, 718, 721.

Although Plaintiff still exhibits symptoms from her mental health conditions, Plaintiff's condition improved after she stopped using methamphetamine and received mental health treatment. In Plaintiff's function report dated June 16, 2016, Plaintiff reported that she was short with people, unable to go out in public due to her PTSD, prone to violent outbursts, and that she never spent time with others whether on the phone or in person. AR 230, 234. Plaintiff also stated that she went out in the community for appointments or to get groceries one-to-two times a month,

did not like to be around people, and did not get along with authority figures. AR 233-35. During the administrative hearing, however, Plaintiff testified that during the day she typically hangs out with her friends at their homes or makes meals at her mother's home, although Plaintiff and her mother do not always get along. AR 17, 56-57. Moreover, Plaintiff testified that she rides public transportation, couch surfs at her mother's or her friends' houses, and goes to Walmart weekly to grocery shop. AR 54-55. The ALJ reasonably considered Plaintiff's lack of violent outbursts and increased socialization as demonstrating her improvement with treatment and after she stopped using methamphetamine. This improvement is a clear and convincing reason to discount Plaintiff's allegations of disabling mental impairments.

Plaintiff argues that her symptoms did not improve to the point of being able to sustain full-time employment. Consistent with the ALJ's findings, however, the state agency medical consultants, Drs. Kessler and Hennings, both opined that when Plaintiff's substance use is not material, she can sustain full-time employment. AR 95, 120. Dr. Kessler stated that absent material substance use, Plaintiff "could perform simple, repetitive work; could handle no more than occasional public contact; could interact with coworkers in structured settings; and should be limited to tasks that do not require much change." AR 23, 98-101. Because Plaintiff stopped using methamphetamine in November 2016, less than a year after her amended alleged onset date, the ALJ concluded that the evidence does not support a finding that Plaintiff's substance use is material. Thus, the ALJ did not err in discounting Plaintiff's subjective symptom testimony because her condition improved with her continued sobriety and mental health treatment, and the state agency medical consultants concluded that absent material substance use, Plaintiff can sustain full-time employment.

### ii.  Activities of Daily Living

The ALJ also determined that Plaintiff's testimony about her activity level was inconsistent with her alleged limitations. The ALJ stated that "[d]espite anxiety, depression, and schizophrenia, she has increased her social activities. She testified that she spends much of the day with her friends. She shops, and she uses public transportation. The claimant testified that she is homeless. However, she stays with friends or her mother every night." AR 19-20. The ALJ also noted that Plaintiff cooks gluten-free meals at her mother's house and helped care for her roommate's three dogs and three cats when he suffered a stroke in 2016. AR 20. Plaintiff argues that her activities of daily living do not contradict her subjective symptom testimony and that although she has some limited activities of daily living, she does not spend a substantial part of her day engaged in activities that transfer to work skills.

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for

exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

During the hearing, Plaintiff testified that she gets distracted easily. AR 59-61. Despite this testimony, the ALJ noted that Plaintiff "wrote that she could pay attention without difficulty" and follow written instructions well, although she indicated that spoken instructions may need to be repeated. AR 17, citing AR 235. The ALJ also concluded that despite Plaintiff's mental health diagnoses, Plaintiff can adapt and manage herself well. AR 17-18. The ALJ stated that although Plaintiff is homeless, she has adapted by staying with her mother or her friends every night. Furthermore, despite having celiac disease, Plaintiff can manage her diet by cooking meals at her mother's house. *Id.* The ALJ considered Plaintiff's activities of daily living and contrasted them with Plaintiff's subjective symptom testimony, finding that Plaintiff's activities of daily living were inconsistent with Plaintiff's allegations of disabling mental impairments.

The Ninth Circuit upheld an ALJ's finding that a claimant's "ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child" contradicted claims of disability caused by major depressive disorder and a personality disorder. *Morgan v. Comm'r of*

*Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Such activities indicate that a claimant's

mental impairments are not as disabling as claimed. Similarly, the ALJ's finding that Plaintiff's

increasing socialization, significant time spent with friends, ability to take public transportation,

ability to shop, ability to cook, and time spent taking care of her roommate's pets, contradict her

claim of a totally disabling mental impairment is a rational interpretation of the record. AR 19-20.

Although Plaintiff's activities of daily living may be subject to an interpretation more favorable to

Plaintiff, the ALJ's interpretation was rational. A court "must uphold the ALJ's decision where the

evidence is susceptible to more than one rational interpretation." *Magallanes*, 881 F.2d at 750.

Thus, Plaintiff's activities of daily living are a specific, clear, and convincing reason to discount

Plaintiff's subjective symptom testimony regarding her mental impairments.

### b.  Physical Impairments

#### i.  Activities of Daily Living

Plaintiff argues that the ALJ erred by relying on Plaintiff's activities of daily living to

discredit her subjective symptom testimony about her physical impairments. Plaintiff argues that

her activities of spending time with friends, shopping, using public transportation, sleeping at her

mother's or her friends' houses, making gluten-free meals, and caring for her roommate's pets do

not undermine Plaintiff's statements that she has difficulty walking for long periods, needs help

doing laundry, naps during the day because of fatigue and lack of sleep, and has chronic stomach

pain, diarrhea, and nausea from celiac disease. During the hearing, Plaintiff further testified that

she naps during the day five days a week and needs help doing her hair because she cannot lift her

left arm very far. AR 54 Plaintiff also states that she does not spend a substantial part of her day

engaged in these activities and therefore her activities do not conflict with her subjective symptom

testimony.

These minimal activities do not indicate that Plaintiff can engage in a 40-hour work week. Thus, they must contradict Plaintiff's testimony about her physical limitations. The ability to give pets food and water, occasionally grocery shop, and make simple meals are the type of activities the Ninth Circuit repeatedly has asserted do not contradict claims of disability. Nor do they contradict any specific testimony or specific alleged limitation by Plaintiff. This is not a clear and convincing reason to discount Plaintiff's alleged physical impairments.

### ii.  Failure to Seek Treatment

The ALJ also noted that for Plaintiff's back pain, Plaintiff "has received relatively little treatment for degenerative disc disease after [her] alleged onset date . . . ." AR 21. The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ properly may rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina*, 674 F.3d at 1113 (quoting *Tomasetti*, 533 F.3d at 1039) (quotation marks omitted). Thus, the ALJ did not err by giving Plaintiff's subjective symptom testimony less weight because of Plaintiff's failure to seek treatment for her back pain.

### iii.  Objective Medical Evidence

The ALJ also discounted Plaintiff's back and shoulder subjective symptom testimony because Plaintiff's testimony was inconsistent with the objective medical evidence. AR 21. Plaintiff testified that because of her back pain she has difficulty standing or walking for long periods and needs help getting wet laundry out of the machine. AR 51-52, 55-57. Plaintiff also testified that she has trouble sleeping and takes naps during the day. AR 59-61. An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting

that the Commissioner will not "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ found that Plaintiff's subjective symptom testimony about her back and shoulder was inconsistent with the clinical findings supported in the record. The ALJ recognized that Plaintiff has a history of degenerative disc disease. A 2007 study showed that Plaintiff has mild cervical spine degeneration with a small osteophyte complex and no significant stenosis. AR 408. In October 2011, an MRI of Plaintiff's spine revealed a disc protrusion at L5-S1. AR 407. As for Plaintiff's shoulder pain, the ALJ noted that Plaintiff saw Dr. Patrick Chen for pain in her left arm and shoulder after reaching backwards in June 2017. AR 1199-1202. Dr. Chen stated that Plaintiff's strength was intact and a Spurling's test was negative, but her shoulder was tender and active abduction and extension were limited. AR 1202. Dr. Chen diagnosed Plaintiff with bicep tendonitis and a left rotator cuff sprain and recommended ice and physical therapy. *Id.* One month later, Plaintiff saw Dr. Noah Hornick and reported having right shoulder pain. AR 1208. Dr. Hornick stated that Plaintiff had right shoulder tenderness with a limited range of motion and diagnosed Plaintiff with bicep tendonitis. AR 1211. Dr. Hornick prescribed Flexeril and naproxen but stated that Plaintiff's pain seemed to exceed his expected levels. *Id.* Lastly, in July 2017, shoulder x-rays showed Plaintiff has possible tendonitis in her left shoulder and her right shoulder x-rays were normal. AR 925**.** The ALJ properly considered the degree of the objective medical findings as a factor in "determining the severity of [Plaintiff's] pain." *Rollins*, 261 F.3d at 857. The ALJ, however, did not solely rely on the lack of support in Plaintiff's objective medical records to discount Plaintiff's testimony concerning her physical impairments.

### B.  "Other" Medical Source Opinion Evidence

#### 1.  Applicable Law

Effective March 27, 2017, the Social Security Administration amended its regulations and SSRs relating to the evaluation of medical evidence, including the consideration of "acceptable medical sources" and "non-acceptable medical sources" or "other medical sources."[3] Most of these changes were effective only for claims filed after March 27, 2017. The Administration, however, implemented revised versions of 20 C.F.R. §§ 404.1527(f) and 416.927(f) to provide "clear and comprehensive guidance" about how to consider "other" medical sources for claims filed before March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's claim was filed before March 27, 2017, and the ALJ issued his opinion after March 27, 2017, the revised version of 20 C.F.R. § 416.927 governs Plaintiff's claim.

The revised regulation incorporates the policy in SSR 06-03p of separating acceptable medical sources (licensed physicians and certain other qualified specialists) from "other" medical sources and generally giving less deference to "other" medical sources. It also incorporates the policies of requiring the ALJ to consider "other" medical source opinions, explain the weight given to such opinions, provide sufficient analysis to allow a subsequent reviewer to follow the ALJ's reasoning, and to provide sufficient detail and explanation if the ALJ gives greater weight to an opinion from an "other" medical source than a medical opinion from a treating source. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5845; *see also* 20 C.F.R.

---

[3] Among other things, the Commissioner rescinded SSR 06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

§ 416.927(f). Because Kathryn Clark, QMHC is a qualified mental health counselor, she is considered an "other" medical source.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id*. at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. "[A]n ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

### 2. Analysis

Plaintiff argues that the ALJ erred by failing to provide a germane reason for rejecting Ms. Clark's opinion. Ms. Clark filled out a questionnaire in April 2018 diagnosing Plaintiff with PTSD and bipolar disorder. AR 1349-51. Ms. Clark stated that Plaintiff had marked limitations in the following areas: "making work-related decisions; interacting with the public; keeping social interactions free of inappropriate behavior such as irritability, sensitivity, argumentativeness, or suspiciousness; avoiding work distractions while not creating distractions for others; managing psychologically based symptoms; and working a full workday or workweek without needing additional rest breaks." AR 22. Ms. Clark noted that Plaintiff had moderate limitations in almost every other category and would need additional supervision 15-20 percent of the workday. *Id.*; *see also* AR 1349-51. Ms. Clark stated that Plaintiff would have impaired concentration and attention 20 percent of the workday, need additional breaks at work, and that these limitations likely existed when Plaintiff last worked in the early 2000s. *Id.*

The ALJ gave Ms. Clark's opinion limited weight because the ALJ found that the weight of the evidence did not justify marked limitations or the degree of limitations that Ms. Clark identified. AR 22. The ALJ stated that Ms. Clark did not consider Plaintiff's activities of daily living that included the ability to spend her days with friends, handle public activities such as shopping and using public transportation, cook gluten free meals for herself, and find places to stay despite lacking a permanent home. *Id.* The ALJ's conclusion that Plaintiff's activities of daily living conflict with Ms. Clark's opinion is a rational interpretation of the evidence in the record. Ms. Clark opined that Plaintiff had marked limitations in interacting with the general public. AR 1350. Plaintiff's ability to go to Walmart weekly for grocery shopping and use public transportation could rationally be construed as being inconsistent with Ms. Clark's opinion that Plaintiff has marked limitations in interacting with the general public. Rational minds may

disagree about whether grocery shopping or using public transportation constitutes sufficient interaction with the public to show whether a person has marked limitations in interacting with the general public. Nonetheless, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198. Furthermore, a germane reason is a lower standard than clear and convincing, the standard for discounting a claimant's testimony.

The ALJ also found that the evidence did not support Ms. Clark's opinion that Plaintiff has difficulties with distractions or making decisions or that Plaintiff needed extra breaks. The ALJ concluded that "no specific mental status examination leads to a finding of impaired concentration 20% of the time." AR 22. The ALJ noted that Ms. Clark's opinion is inconsistent with Plaintiff's statements that she could concentrate well. AR 235 (stating that Plaintiff has "no problem" with paying attention and that she can follow written instructions well, but with spoken instructions she is "ok" and may need them to be repeated). Lastly, the ALJ gave Ms. Clark's opinion limited weight because her conclusion that Plaintiff's limitations likely existed in the early 2000s was speculative and vague and because Ms. Clark did not explain or support this conclusion. AR 22. An ALJ may reject an opinion if that opinion is "brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. Thus, the ALJ did not err because he gave germane reasons for assigning limited weight to Ms. Clark's opinion.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 27th day of April, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge